# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued October 15, 2010          Decided December 28, 2010

No. 09-1204

APACHE CORPORATION,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

ENOGEX LLC, CHESAPEAKE ENERGY CORPORATION, AND
MIDCONTINENT EXPRESS PIPELINE LLC,
INTERVENORS

———

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

———

*Seth P. Waxman* argued the cause for petitioner. With him on the briefs were *Jonathan E. Nuechterlein*, *Heather M. Zachary*, and *Kenneth E. McNeil*.

*Carol J. Banta*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief were *Thomas R. Sheets*, General Counsel, and *Robert H. Solomon*, Solicitor.

*James F. Bowe, Jr.*, *Brett A. Snyder*, *David I. Bloom*, *Adam C. Sloane*, *James F. Moriarty*, *Thomas E. Knight*, and *Shannon Grewer* were on the brief for intervenors in support of respondent.

Before: TATEL, GARLAND, and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*: Pursuant to its congressionally assigned authority, the Federal Energy Regulatory Commission regulates the transmission of oil, electricity, and natural gas. Its goals are to promote competition and help American consumers gain access to reliable and affordable energy. This case involves three regulated entities in the natural gas market: Apache, a natural gas producer; Enogex, an intrastate natural gas pipeline; and Midcontinent, an interstate natural gas pipeline. All three companies have operations in Oklahoma, where Apache produces natural gas that is shipped over Enogex's pipeline.

In 2006, the two pipelines agreed to a lease that would enable the larger, interstate pipeline (Midcontinent) to transport natural gas over the smaller, intrastate pipeline (Enogex). As required by statute, the pipelines sought FERC's approval. Apache, a customer that uses Enogex's pipeline, objected to the lease, claiming that it was discriminatory and would harm existing Enogex customers. The Commission rejected those arguments and approved the lease.

In this Court, Apache challenges FERC's approval as contrary to the Commission's regulations and precedents. We find that the Commission did not adequately explain one aspect of its decision to approve the lease, and we therefore remand for the Commission to clarify its ruling. But we do not vacate FERC's order; its approval of the Enogex-Midcontinent lease remains in effect and legally binding. We deny the petition in part and remand for further explanation.

I

Natural gas producers find deposits underground and bring the gas up to wellheads. Pipelines then transport the gas from wellheads to local distribution companies.

Because building a duplicative natural gas pipeline usually does not make economic sense, the owner of a pipeline typically possesses a monopoly in its respective region. Acting pursuant to its statutory authority, FERC has long sought to prevent abuses of that monopoly power. *See Nat'l Fuel Gas Supply Corp. v. FERC*, 468 F.3d 831, 834-35 (D.C. Cir. 2006). FERC now achieves that goal through "open access" mandates. Commission Orders 436 and 636, for example, require pipelines to provide producers with non-discriminatory "open access" to natural gas transportation. *See id.* at 835; *Assoc. Gas Distribs. v. FERC*, 824 F.2d 981, 997 (D.C. Cir. 1987).

Apache is a natural gas producer that operates wellheads in Oklahoma. Enogex operates an intrastate natural gas pipeline in Oklahoma and also offers limited interstate transportation services under Section 311 of the Natural Gas Policy Act of 1978. *See* 15 U.S.C. § 3371. Apache transports nearly all of its Oklahoma gas over Enogex's pipeline.

Apache and Enogex have contracted only for "interruptible" service, meaning that Apache's shipments may be interrupted (that is, must wait) if another Enogex customer has a prior claim or higher priority. *See* 18 C.F.R. § 284.9.

Midcontinent is an interstate natural gas pipeline that recently constructed a line extending from Bennington, Oklahoma, to Butler, Alabama. In 2006, before Midcontinent completed its new pipeline, Midcontinent and Enogex entered into a lease agreement. Under the agreement, Midcontinent would lease part of Enogex's pipeline capacity, allowing Midcontinent to transport gas from various points in Oklahoma to Bennington and, from there, into Midcontinent's interstate system.

As required by law, Enogex and Midcontinent requested FERC's approval of the lease. Concerned that the Enogex-Midcontinent lease would reduce its own access to Enogex's pipeline, Apache objected. The Commission concluded, however, that the proposed arrangement did not unduly discriminate against Apache and that the agreement satisfied FERC's standards for approval of pipeline leases. FERC thus approved the lease and subsequently denied Apache's petition for rehearing.

Apache now seeks review of FERC's decision in this Court.

II

Apache raises two challenges to the Commission's decision.

*First*, Apache contends that the Enogex-Midcontinent lease is discriminatory and that FERC's approval subverts the "open access" regulatory regime for natural gas transportation. According to Apache, Enogex has given a better deal to fellow pipeline Midcontinent than it has to producers like Apache. As a result, according to Apache, the lease discriminates against Apache and in favor of Midcontinent.

Apache did not raise this claim in its petition for rehearing to the Commission, and we therefore do not reach the issue here. The Natural Gas Act provides that "[n]o objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do." 15 U.S.C. § 717r(b). In its petition for rehearing to the Commission, Apache argued that the lease discriminated against it in favor of Midcontinent's customers, *not* that the lease discriminated against it in favor of Midcontinent itself. Request of Apache Corp. for Reh'g at 9, Nos. CP08-6-000, CP08-9-000 (Aug. 25, 2008), reprinted in Joint Appendix 212. Indeed, Apache's petition for rehearing expressly disavowed Apache's current claim, emphasizing that "[t]he discrimination is not between Midcontinent the lessee, and the other Enogex shippers." *Id.* Given that Apache did not advance – and in fact affirmatively disclaimed – the discrimination argument it now articulates, we do not consider Apache's undue discrimination claim.

*Second*, Apache alternatively argues that the Enogex-Midcontinent lease did not meet the Commission's standard for approval of pipeline leases.

Since 2002, the Commission's practice has been to approve a pipeline lease if: "(1) there are benefits for using a lease arrangement; (2) the rate under the lease is less than comparable transportation service; and (3) the lease arrangement *does not adversely affect existing customers*." *Islander East Pipeline Co.*, 100 FERC ¶ 61,276, at ¶ 69 (2002) (emphasis added).  FERC dutifully cited that test in its order approving the Enogex-Midcontinent lease.  *See Midcontinent Express Pipeline LLC and Enogex Inc.*, 124 FERC ¶ 61,089, at ¶ 31 (2008).  But the problem here, as Apache correctly points out, is that the Commission never concluded that the Enogex-Midcontinent lease would not adversely affect existing customers, the third prong of the test.  Instead, FERC simply found that the lease would "not have an *unduly* adverse impact on Enogex's existing services."  *Id.* ¶ 43 (emphasis added).  The Commission further determined that the lease's benefits "outweigh any potential harm to Enogex's customers."  *Id.* ¶ 32.

The confusion arises because FERC's analysis – with its focus on whether the lease would cause any *undue* adverse effects – is inconsistent with FERC's pre-existing test for pipeline leases, which examined whether the lease would cause *any* adverse effects.  There is a difference between adverse effects and *undue* adverse effects.  The former inquiry focuses on a single factor in isolation; the latter inquiry entails a balancing of multiple factors.

FERC might have tried to explain its decision in one of at least two ways.  First, FERC counsel suggests here that diminished interruptible service does not constitute an "adverse effect" for purposes of pipeline lease analysis because interruptible service is inherently subject to disruption and therefore cannot be "adversely affected" by a

lease. Alternatively, the Commission might have modified its pipeline lease test to preclude only "undue" adverse effects and to expressly permit balancing of benefits against burdens – either for all leases, or for a smaller subset that includes the Enogex-Midcontinent lease. (FERC of course also could have expressly relied in the alternative on both grounds.)

We do not decide the reasonableness of either of these rationales because the Commission followed neither in the order under review. It instead purported to follow its precedents but then failed to apply the standard set forth in those decisions. Because FERC has not provided a reasoned explanation for its decision, we must remand for clarification. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43-44 (1983).

After FERC settles on an approach on remand, Apache of course may file a new petition for review if it believes FERC's chosen path to be unlawful. Applying our precedents on remand without vacatur, however, we find no basis at this point for vacating FERC's order approving the Enogex-Midcontinent lease. There is "a serious possibility that the Commission will be able to substantiate its decision on remand." *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 151 (D.C. Cir. 1993). And "the disruptive consequences of vacating" are substantial. *Id.* The FERC order approving the Enogex-Midcontinent lease thus remains in effect and legally binding. Because we are not vacating the order approving the lease, we expect and direct FERC to provide the necessary clarification without undue delay.

8

\* \* \*

We deny Apache's petition in part and remand for further explanation.

*So ordered.*